UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KELLY J.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:21cv176 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Social Security Act, 42 U.S.C. § 423(d); 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

2

       through December 31, 2022.

2.     The claimant has not engaged in substantial gainful activity since November 2, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.     The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status-post surgery; osteoarthritis of the right knee, status-post total knee replacement; neuropathy, status post right upper extremity surgery; hip bursitis; chronic obstructive pulmonary disease/asthma; migraine headaches; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the claimant should never operate foot controls with her bilateral lower extremities. She is limited to frequent pushing/pulling with the bilateral lower extremities and frequent handling, fingering, and feeling with the bilateral upper extremities. The claimant could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however, she should never climb ladders, ropes, or scaffolds. She could tolerate occasional exposure to dust, fumes, odors, gases and poor ventilation, but she should avoid all exposure to wetness, humidity, extreme cold, extreme heat, and chemicals. The claimant should also avoid all exposure to unprotected heights, moving machine parts and vibration. Finally, the claimant could tolerate only moderate noise as defined in the SCO.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on August 4, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

> job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-34).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on January 26, 2022. On February 16, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on March 2, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

4

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

On February 28, 2018, Plaintiff protectively filed applications for DIB and SSI benefits alleging disability since November 2, 2017, due to: osteoarthritis; degenerative disc disease; multiple sclerosis ("MS"); chronic obstructive pulmonary disease ("COPD"); chronic asthma; demyelinating disease; migraines; back injuries; social anxiety; type II diabetes; depression; and legally blind in the right eye. (Tr. 382, 387, 417). Plaintiff's claims were initially denied on July 5, 2018 (Tr. 116), and again upon reconsideration on September 11, 2018. (Tr. 129). A hearing was held on June 24, 2019 (Tr. 35-59), at which Plaintiff amended the onset date to January 10, 2018. (Tr. 213). Subsequent the hearing, the ALJ issued an unfavorable decision on August 1, 2019. (Tr. 210-227).

Plaintiff requested review of the decision, which was granted by the Appeals Council, and on January 10, 2020, it vacated the hearing decision and remanded Plaintiff's matter for further proceedings. (Tr. 234). On June 10, 2020, a hearing was held before the ALJ. (Tr. 94-131). Subsequent to the hearing, the ALJ issued an unfavorable decision on July 6, 2020. (Tr 15-35).

On January 6, 2021, the Appeals Council denied review (Tr. 1-3), making the ALJ's unfavorable decision the Commissioner's final agency decision, leading to the present appeal. This court has jurisdiction of this action. 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 50 years old on the alleged disability onset date and she was 52 years old on the decision date. (Tr. 382, 387). Plaintiff reported completing 4 or more years of college. (Tr.

5

418). She also reported past relevant work as a solder check for an electronics manufacturer, a seller for E-Bay, and an assembly line worker-graphics. (Tr. 418).

In support of remand, Plaintiff first argues that the ALJ erred in his evaluation of the opinion evidence. On January 18, 2017, the SSA adopted new rules which, for claims filed after March 27, 2017, modify the rules for evaluating opinion evidence. 82 F.R. 5844, 5869 (1-18-2017). As these claims were filed on February 29, 2018, the new rules apply here. 82 F.R. 5869. Factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the regulations dictate that the ALJ "will explain" how the supportability and consistency factors were considered in the determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

On May 5, 2019, Frank Murphy, M.D., completed a Physical Assessment Questionnaire. (Tr. 1462). Dr. Murphy opined the following: stand for 20 minutes at one time; stand for 1 hour total in a workday; sit for 20 minutes at a time; sit for 2 hours total in a workday; frequently lie down throughout the day to help decrease pain; occasionally reach up above shoulder, reach down

6

to waist level, reach down towards floor, and handle objects with hands/fingers; lift/carry less than 5 pounds in a workday; and difficulty bending, squatting, kneeling, or turning her body. (Tr. 1462-1463).

>The ALJ discussed Dr. Murphy's opinion as follows:
>
>As for the remaining opinion evidence, Frank Murphy, M.D., the claimant's treating physician, competed a Physical Assessment Questionnaire Form on May 5, 2019. See Exhibits B24F and B32F/p86-89. Dr. Frank Murphy opined that the claimant is able to carry less than five pounds, can stand for one hour and sit for two hours out of an eight hour workday, that she would need to lie down throughout the day due to pain, that she has problems ambulating, that she is able to occasionally reach in all directions or handle objects, that she would have difficulty bending, squatting, kneeling or turning her body, that she is able to travel long distances alone and that she suffers from chronic pain issues. See Exhibit B24F/p2-3. In addition, Dr. Murphy opined in a narrative statement that he believes that the claimant is disabled. See Exhibit B24F/p5. I find that these opinions are not persuasive, as they are not consistent with or are supported by the record, which indicates that the claimant has full strength, range of motion and sensation of all joints except for limited range of motion of her lumbar and cervical spine and diminished strength of her right upper extremity. Moreover, the claimant has only presented with a cane on a few occasions and was noted to be able to walk unassisted without it during examinations. Furthermore, Dr. Murphy indicated that he based his assessment largely upon the claimant's subjective reports, not from any objective evidence, which suggests that they are more severe than they actually are.

(Tr. 31).

>In a letter attached to the "Physical Assessment Questionnaire Form", Dr. Murphy stated:
>
>I am writing to you in regards to [Plaintiff] who is a patient of mine. I have cared for her since December of 2015 as her primary care physician. She is pursuing social security disability due to her inability to work. I was asked to complete a physical assessment questionnaire form. Some of the questions require a formal physical therapy evaluation with an objective functional capacity exam. This is not something that I can complete in my office setting. Patient is very limited on funds and cannot afford this sort of evaluation considering insurances generally do not cover this. This can be pursued if felt necessary in the future but she would need to [have] some assistance in accomplishing this. I did complete the form with the help of [Plaintiff] in a subjective fashion.

7

> [Plaintiff] has a number of chronic health issues which affect her impairment. I believe the most limiting ones are related to her chronic lumbar back pathology where she has had prior lumbar spine fusion surgery. She also has significant cervical spinal stenosis with cervical spondylosis. Both of these conditions create much pain for her and limit her functioning. These conditions are primary cared for by her orthopedic spine surgeon Dr. Deepak Reddy MD, and her pain management provider Dr. Ajit Pai MD. She also follows with a neurologist named Dr. Michael Englert because she has demyelinating lesions on her brain of unknown significance. It would be my recommendation that you seek more detailed information regarding these conditions from her specialist.
>
> Apart from the above diagnosis, [Plaintiff] has a number of other conditions including obstructive lung disease, diabetes mellitus, migraine headaches, anxiety disorder with panic attacks, hyperlipidemia, vitamin D deficiency, and GERD. Patient is on a large number of medications to help control these health related issues. All of these conditions affect her health and limit her ability to obtain and maintain employment. It is my opinion that she would have extreme difficulty finding employment that would be able to accommodate her limitations in functioning. It is for this reason I feel that she is disabled. If I can be of any further assistance in regards to this matter, please do not hesitate to contact me.

(Tr. 1464-65).

The Commissioner argues that the ALJ properly held that Dr. Murphy relied on Plaintiff's subjective reports, and thus the opinion was not persuasive. However, as Plaintiff points out, Dr. Murphy's opinion was not solely based on subjective complaints. Rather, Dr. Murphy, who had treated Plaintiff for a number of years, noted, among other things, Plaintiff's back pathology including prior spine surgeries and spinal stenosis/spondylosis. This Court agrees with Plaintiff that it was error for the ALJ to discount the entire opinion based on the fact that the doctor was very honest in noting that he was not able to do an actual physical therapy functional assessment, and that Plaintiff could not afford such an assessment anyway. Thus, the Court will remand for a proper evaluation of Dr. Murphy's opinion.

Plaintiff also claims error in the ALJ's evaluation of Dr. Inabnit's opinion. On February

8

18, 2020, Dr. Inabnit opined the following: occasionally lift/carry up to 20 pounds; occasionally operate a motor vehicle; occasionally be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations: never be exposed to unprotected heights and moving mechanical parts; occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; never climb ladders or scaffolds; occasionally use bilateral upper extremities for reaching overhead, reaching all other, handling, fingering, feeling, pushing, and pulling; occasionally operate foot controls bilaterally; sit for 1 hour at a time; stand for 15-20 minutes at a time; walk for 5-10 minutes at a time; sit for 2 hours total in a workday; stand/walk for 1 hours total in a workday; and would require the use of a cane to ambulate for short distances.[2] (Tr. 1536-1541).

> The ALJ held:
>
> I find the consultative opinion completed by Dr. Inabnit in February of 2020 unpersuasive. See Exhibit B26F/p9-14. Based on his consultative examination, Dr. Inabnit opined that the claimant could occasionally lift/carry up to twenty pounds, but sit only two hours in an eight-hour workday and stand/walk a total of two hours in an eight-hour workday. Id. He opined that the claimant could only occasionally use her bilateral upper extremities for reaching, reaching overhead, handling, fingering, feeling, and pushing/pulling. See Exhibit B26F/p13. Dr. Inabnit did not find a cane medically necessary, but opined that the claimant would need a cane for "short distances." See Exhibit B26F/p14. He also proposed postural and environmental limitations generally consistent with the finding reached in this decision.
>
> However, the remaining portions of Dr. Inabnit's opinion appear entirely inconsistent with his own clinical findings. As noted more fully above, Dr. Inabnit described a normal, causal gait and normal motor strength in the bilateral upper and lower extremities. See Exhibit B26F/p7. Nowhere in his clinical findings does he suggest an ability to stand/walk only two hours and sit only two hours. Further,

---

[2] The assessment on this point is a bit vague, as Dr. Inabnit checked "no", that Plaintiff did not need to use a cane, but then added "short distances", which could very well mean that she didn't need a cane for short distances, but did need one for longer distances.

9

> while he opined that the claimant could only occasionally use her upper extremities, he specifically noted no weakness of the extremities by direct strength testing, as well as intact gross and fine motor skills. See Exhibit B26F/p7-8. There was also no indication that the claimant used a cane or other ambulatory aide. All of the foregoing inconsistencies diminish the overall persuasiveness of Dr. Inabnit's opinion. Given the contradictions, it is reasonable to conclude that Dr. Inabnit relied heavily on the claimant's subjective complaints, which were also already shown to be largely unsupported by the objective evidence of record.

(Tr. 32).

As Plaintiff points out, there in nothing in Dr. Inabnit's opinion to support the speculation that he relied on Plaintiff's subjective complaints in rendering his opinion. Rather, Dr. Inabnit based his opinion on his review of Plaintiff's medical history and examination. Dr. Inabnit noted Plaintiff had a history of depression, DVT, shortness of breath, hyperlipidemia, neck pain, back pain, migraines, hypertension, diabetes, asthma, anxiety, reflux disease, and some MS. (Tr. 1529). Examination of the lumbar spine revealed: forward flexion up to 80 degrees; extension up to 20 degrees; bilateral lateral flexion up to 20 degrees; and bilateral rotation up to 20 degrees. (Tr. 1532). This evidence demonstrates that Dr. Inabnit did not merely rely on Plaintiff's subjective complaints. The ALJ's speculation was error and remand is warranted.

Plaintiff also argues that the opinions of the state agency medical consultants, Drs. Whitley and Sands, were stale. These doctors gave their opinions on July 2, 2018 and September 7, 2018, respectively. Plaintiff points out that there was significant evidence after these consultants offered their opinions. For example, NP Rohrman reviewed an MRI of the cervical spine from November 14, 2018, which revealed: straightening of the cervical spine; 2 mm retrolisthesis of C5-C6; facet sclerosis and mild hypertrophy; mild disc bulge indented the thecal sac at C3-C4; uncovertebral joint and especially right sided facet hypertrophy contributed to

10

apparently more pronounced mild left and moderate right foraminal stenosis; mild broad based disc bulge at C5-C6 level; new 2 mm central to right paracentral disc protrusion with more prominent right and left marginal uncovertebral joint hypertrophy resulting in mild central spinal stenosis and more pronounced mild-to-moderate right and mild left foraminal narrowing; mild broad based disc bulge and 1 mm central disc protrusion with more prominent right and left marginal uncovertebral joint hypertrophy which resulted in mild central spinal stenosis at C6-C7; and moderate to severe more prominent left-sided foraminal narrowing with mild-to moderate right -sided foraminal narrowing at C6-C7. (Tr. 1645).

The Commissioner acknowledges that the consultants' opinions were stale, but claims that the ALJ took note that more recent medical records warranted additional limitations. (Tr. 31). The Commissioner also argues that even if the additional evidence had been considered by the state agency consultants, that Plaintiff has not identified that the evidence supports specific limitations. However, Plaintiff argues generally that if all of the medical opinions had been properly evaluated by the ALJ, Plaintiff would have been found to not be able to perform even sedentary work, which she argues would lead to a ruling that she is disabled and entitled to benefits. As this is an issue of extreme importance in this case, this Court will remand so that, if necessary, a new and updated agency consultant opinion can be obtained.

Plaintiff also asserts that if the medical opinions were found persuasive that she would not be able to do all of the jobs that the VE identified, as she would not be able to perform the Marker job, or the Mail Clerk job, leaving only the job of Furniture Rental Clerk, with 31,000 jobs nationally. (Tr. 119). Plaintiff contends that 31,000 jobs is not a "significant number" of jobs. The Commissioner argues that the Seventh Circuit has held that 30,000 jobs constitute a

11

"significant number". *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194 (7th Cir. July 22, 2021). However, this decision is a nonprecedential disposition and, in any event, did not directly hold that 30,000 jobs was a significant number, as that specific issue apparently wasn't raised by the plaintiff in that case. While there is no definite number of jobs that is or isn't a "significant number", this Court has recently held that 37,000 jobs was significant. *Levitz v. Commissioner of Social Security*, No. 1:20cv407-SLC, 2022 WL 110239, at *4 (N.D. Ind. Jan. 12, 2022). However, without a definitive directive from the Seventh Circuit on this issue, the Court is reluctant to accept 31,000 jobs as a "significant number". Thus, the ALJ should keep this point in mind upon remand.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 4, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court